NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**SKULLCANDY, INC.,**
*Appellant*

v.

**CSR LIMITED,**
*Appellee*

---

2016-1384

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. 95/001,305.

---

Decided: March 2, 2017

---

GREGORY A. CASTANIAS, Jones Day, Washington, DC, argued for appellant. Also represented by JOSHUA R. NIGHTINGALE, Pittsburgh, PA.

JEFFREY ERIC OSTROW, Simpson Thacher & Bartlett, LLP, Palo Alto, CA, argued for appellee.

---

Before LOURIE, HUGHES, and STOLL, *Circuit Judges.*

LOURIE, *Circuit Judge.*

This case returns to us following remand to the Board. Skullcandy, Inc. ("Skullcandy") appeals from the U.S. Patent and Trademark Office ("PTO") Patent Trial and Appeal Board ("Board") decision in an *inter partes* reexamination reversing the examiner's decision not to reject claims 1–6 of U.S. Patent 7,187,948 (the "'948 patent") as unpatentable as anticipated (claims 1 and 4) or obvious (claims 2, 3, 5, and 6). *See CSR PLC v. Skullcandy, Inc.*, No. 2013-000114, 2015 WL 1941091 (P.T.A.B. Apr. 28, 2015). Because the Board did not err in its unpatentability findings or conclusions, we *affirm*.

Skullcandy owns the '948 patent, which is directed to an apparatus that allows a user to listen to music on a portable device and, when a telephone call is received, to substitute the audio signal from the music device with the audio signal from the phone. '948 patent col. 1 ll. 55–67, col. 2 ll. 41–47. The PTO granted CSR Limited's ("CSR") request for *inter partes* reexamination. The examiner, however, did not adopt CSR's proposed rejections, and the Board affirmed the examiner's decision. CSR appealed to this court.

On appeal, we vacated the Board's decision because "the Board failed to construe 'threshold value' in a manner that would permit meaningful appellate review." *CSR, PLC v. Skullcandy, Inc.*, 594 F. App'x 672, 677 (Fed. Cir. 2014). We instructed the Board on remand to "construe 'threshold value' and apply the construction to" U.K. Patent Publication 2357663A ("Smith"). *Id.* at 678.

On remand, the Board reversed the examiner's decision and rejected claims 1 and 4 as anticipated by Smith and claims 2, 3, 5, and 6 as obvious over Smith and U.S. Patent 6,006,115 ("Wingate"). In construing "threshold value," the Board first stated what the term means based on the following information in isolation: (1) "the words of the claims themselves in proper context"; (2) dictionary definitions; and (3) the specification. *CSR*, 2015 WL

1941091, at *5. Weighing all of this evidence, the Board construed "threshold value" "to include a level or amount at which a signal is detectable or able to be perceived and at which the signal may interrupt another signal." *Id.*; *see also* J.A. 16. The Board then found that Smith discloses a "threshold value." *CSR*, 2015 WL 1941091, at *5; *see also* J.A. 18. Skullcandy requested rehearing by the Board, which the Board denied. J.A. 19.

Skullcandy timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A).

On appeal, Skullcandy argues that the Board erred in its construction of "threshold value" and that, under the correct construction, the claims are not unpatentable. Skullcandy contends that (1) the Board provided three separate, inconsistent constructions of "threshold value," only one of which is reasonable; (2) the broadest reasonable interpretation of "threshold value" is "a certain amount associated with a signal that may trigger an interruption of another signal when that certain amount is attained," Appellant's Br. 19 (quoting *CSR*, 2015 WL 1941091, at *5); and (3) the Board failed to apply that construction.

We disagree. Although the Board made three summary statements about what "threshold value" means based on subsets of information, it ultimately provided one construction of the term. *See CSR*, 2015 WL 1941091, at *5 ("Hence, the weight of the evidence strongly points to the proper construction of the term 'threshold value' as would have been understood by one of ordinary skill in the art to include a level or amount at which a signal is detectable or able to be perceived and at which the signal may interrupt another signal."). Moreover, the Board confirmed that it had provided a single construction in denying Skullcandy's rehearing request. *See* J.A. 16.

Furthermore, the Board's construction of "threshold value" was not unreasonable based on the intrinsic record

and the extrinsic evidence relied on by the Board. The written description and claim language neither define "threshold value" nor compel Skullcandy's proposed construction. The Board's construction does not render the "threshold value" limitation superfluous or redundant.

In any event, the Board's finding on rehearing that Smith discloses a "threshold value," even under Skullcandy's proposed construction, is supported by substantial evidence. For example, Smith discloses a wireless communication adapter that can receive signals from multiple devices, *e.g.*, a music player and a telephone. Smith teaches that an "incoming [call] would be processed and routed to the headset . . . [and] the other signal (music in this example) would be stopped so the user and the person on the other end of the phone would not hear the music." J.A. 1553. Those teachings constitute substantial evidence to support the Board's finding that Smith discloses a "threshold value."

We have considered Skullcandy's remaining arguments, but find them to be unpersuasive. For the foregoing reasons, we affirm the Board's decision.

**AFFIRMED**